# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1312MN

_____

In re: Susan E. Wick,                       *
                                            *
              Debtor.                       *
                                            *
John R. Stoebner,                           *
                                            *   On Appeal from the
              Trustee-Appellant,            *   United States District Court
                                            *   for the District of
    v.                                      *   Minnesota.
                                            *
                                            *
Susan E. Wick; Teaching Temps, Inc.;        *
Nichols Kaster & Anderson,                  *
                                            *
              Claimants-Appellees.          *

_____

Submitted:  October 19, 2001

Filed:  January 9, 2002
_____

Before BOWMAN, RICHARD S. ARNOLD, and HANSEN, Circuit Judges.
_____

RICHARD S. ARNOLD, Circuit Judge.


The trustee in bankruptcy appeals the District Court's decision that Susan Wick, the debtor, is entitled to the entire amount of proceeds from stock options that were not yet vested when she filed for Chapter 7 bankruptcy. The District Court held

that the options were fully exempted, and that, in any event, the trustee's failure to object to the exemption within 30 days barred the estate from receiving the proceeds. We reverse. We hold that Ms. Wick exempted the options only partially. The estate is therefore entitled to the part of the options' value that is the result of Ms. Wick's pre-petition services, less her exemption amount. Accordingly, we remand for entry of judgment in favor of the trustee for $28,475.

## I.

On July 29, 1997, Ms. Wick filed for Chapter 7 bankruptcy. On Schedule B, Personal Property, she listed as an asset the "[p]otential right to receive percentage interest in Teaching Temps, Inc. under employment agreement" and stated its current market value as "[u]nknown." Ms. Wick had received this contingent stock option as part of the sale of her company, Teaching Temps, Inc., in March 1997 to Joseph Noonan. In order to receive a 24.5% share of the company's stock, Ms. Wick was required to remain an employee of Teaching Temps until March 1998, one year following the date of the agreement.

Ms. Wick also listed her stock options on Schedule C, Property Claimed as Exempt. Using the federal "wild card" or "catchall" exemption, 11 U.S.C. § 522(d)(5), as the statutory basis, Ms. Wick listed the stock options, stating the current market value of the options as "unknown" and the value of her claimed exemption as "unknown."

At the meeting of creditors, the trustee in Ms. Wick's case had the opportunity to question Ms. Wick about the stock options. He requested and received from her a copy of the employment agreement that described the options. The trustee did not object to the exemption at that time. On November 4, 1997, Ms. Wick received a discharge of her debts. She continued to work for Teaching Temps.

Eight months later, in July 1998, the trustee wrote to Ms. Wick, asking whether she was still employed with Teaching Temps and whether she had exercised her stock-option rights. Ms. Wick responded that she was no longer employed at Teaching Temps and that she had attempted to exercise her options in April 1998 but had been "denied." Her veracity was later questioned by the trustee and the Bankruptcy Court, because while at the time of her letter she may have believed she had been fired and would not receive her options, she actually returned to work a few days later and received her stock certificates in September 1998. Thus, while Ms. Wick may not have lied to the trustee in her letter, she was not entirely candid and never informed him of the changed circumstances.

On October 2, 1998, Ms. Wick sued Mr. Noonan and Teaching Temps in state court, requesting a court-ordered buyout of her company stock as authorized by Minnesota law. On October 23, 1998, Ms. Wick's bankruptcy case was closed. On February 26, 1999, shortly before the start of the state trial, the trustee informed Ms. Wick and Mr. Noonan that he was asserting a claim to Ms. Wick's stock rights. However, he did not participate in the trial. The state court ordered the buyout Ms. Wick requested, valuing her 24.5% share of Teaching Temps at $97,200. The trustee petitioned to re-open the bankruptcy case and demanded turnover of the $97,200 (the value of Ms. Wick's stock) minus the $3,925 exemption.

The Bankruptcy Court held a hearing to determine the parties' rights in the proceeds of the options. Stoebner v. Wick (In re Wick), 249 B.R. 900 (Bankr. D. Minn. 2000). It recognized that the closing of a bankruptcy case normally results in a technical abandonment to the debtor of all unadministered property under § 554(c), but found that when a debtor gives a trustee false or incomplete information about an asset, the abandonment is revocable. Neither party contests this ruling. With regard to the options, the Court found that Ms. Wick's use of "unknown" for the exemption amount on her schedule should be construed against her, and that, on the facts of this

case, Ms. Wick intended to exempt the stock options only partially, to the extent of the remaining dollar amount allowed by law.

The Bankruptcy Court cited cases holding that if an asset appreciates post-petition, the estate, rather than the debtor, is entitled to that appreciation. However, because the options were only one-third into their vesting period (four months of the one-year period) when Ms. Wick filed for bankruptcy, the Court held that the estate's interest was limited to one-third of the option's overall value minus Ms. Wick's $3,925 exemption. The Court ruled that Ms. Wick was entitled solely to the remaining two-thirds of the options' value because she had worked for eight months post-petition to complete the vesting period, and the Bankruptcy Code excludes post-petition earnings from the services of an individual debtor from the bankruptcy estate under 11 U.S.C. § 541(a)(6). Therefore, the Bankruptcy Court ordered that the trustee receive $28,475 of the $97,200 at issue. In so doing, it rejected the argument that Taylor v. Freeland & Kronz, 503 U.S. 638 (1992), barred any judgment in the trustee's favor because he failed to object within the 30-day limit provided by Federal Rule of Bankruptcy Procedure 4003(b). The Bankruptcy Court distinguished Taylor in several ways and held it inapplicable.

On appeal, the District Court reversed. Stoebner v. Wick (In re Wick), 256 B.R. 618 (D. Minn. 2001). The Court held that Ms. Wick had exempted the entire asset. It began by valuing the options on the day of filing at $4,863, using trial evidence introduced by Ms. Wick's expert witness. Then, it limited the estate to a one-third interest ($1,605)[1] in the $4,863 because the bankruptcy was filed one-third of the way into the one-year vesting period. Because Ms. Wick's available exemption value ($3,925) exceeded the estate's one-third interest ($1,605), the Court held that

---

[1]We calculate that one-third of $4,863 is $1,621, not $1,605 as Ms. Wick's counsel argued and both courts found. Since the figure does not affect our analysis, for simplicity's sake we use the $1,605 figure in this opinion.

the asset was fully exempted, "fell out" of the estate, and vested wholly in the debtor. Additionally, the Court held that Taylor barred the trustee from challenging the value of the exemption beyond the 30-day deadline. Accordingly, the Court ordered that Ms. Wick receive the entire amount of the cash value of the stock, $97,200.

II.

The trustee appeals, arguing that the Bankruptcy Court correctly determined the parties' relative interests. He contends that the estate was entitled to all the appreciation on one-third of the options, less Ms. Wick's exemption. He also argues that Taylor does not apply to the facts of this case. Our standard of review is the same as that of the District Court. We review factual findings for clear error and legal conclusions de novo. Northwest Vill. Ltd. v. Franke (In re Westpointe, L.P.), 241 F.3d 1005, 1007 (8th Cir. 2001). We conclude that the trustee is right. The Bankruptcy Court properly granted the estate one-third of the options' appreciated value, minus the debtor's exemption.

The parties agree that upon filing Ms. Wick's options became property of her bankruptcy estate. 11 U.S.C. § 541(a)(1) ("[A]ll legal or equitable interests of the debtor in property as of the commencement of the case" are in the estate). The fact that the options were unvested and contingent on Ms. Wick's continued employment does not alter the fact that they were property of the estate. See Allen v. Levey (In re Allen), 226 B.R. 857, 865-66 (Bankr. N.D. Ill. 1998) ("A contingency is no bar to property interest becoming property of the bankruptcy estate, even if the contingency requires additional post-petition services, and even if the right to enjoyment of the property may be defeated.").

Section 522 of the Bankruptcy Code allows debtors to exempt property from the estate, subject to certain limitations. Ms. Wick sought to exempt her stock options and listed the options on her exemption schedule. She listed "unknown" as

the current market value of the options. This designation was presumably designed to reflect the fact that contingent, unvested options are not easy to value. Under the federal exemption scheme applicable to her case, Ms. Wick had available to her the "wildcard" exemption of 11 U.S.C. § 522(d)(5) that allows a debtor to claim as exempt an interest in any property, up to a dollar limit. The parties agree that Ms. Wick had $3,925 left for her use after exempting other property. They disagree, however, on whether Ms. Wick intended to exempt the asset in full or in part.

We believe the Bankruptcy Court correctly determined that the options were partially exempted. The facts suggest that Ms. Wick, her counsel, and the trustee understood that the options were only partially exempt. The trustee requested a copy of the employment agreement and followed up on whether Ms. Wick's options had vested. These actions were logical only if he believed the estate had an ongoing interest in the options. Then, the trustee took Ms. Wick's assurance that her options were denied at face value. In her response to the trustee, Ms. Wick did not question the trustee's follow-up on the options, which suggests that she too understood that the options were only partially exempt. Further, Ms. Wick's counsel acknowledged in a July 22, 1999, letter to the trustee that the estate had at least some, if a minimal, interest in the options. In re Wick, 249 B.R. at 907. ("[I]t is our position . . . that we have claimed the majority of [the options] as exempt.")

We reject Ms. Wick's contention that listing "unknown" as the current market value of the exemptions is sufficient as a matter of law to make an asset fully exempt. Indeed, it may signal nothing more than that the asset has not been valued or that the debtor is unsure of how to come up with an accurate market value. While it is true the trustee did not object to Ms. Wick's exemption, this does not mean that the asset was fully exempted. Here, when a specific dollar figure given by statute limited the amount of the exemption, and the trustee did not forsake an interest in the options, either through inadvertence or misjudgment, listing "unknown" does not, by itself,

render the options fully exempt. Ms. Wick exempted only up to $3,925 of the value of the options, not the entire asset.

Having determined that the options were only partially exempted, we must decide how to divide the proceeds from the options between Ms. Wick and the estate. The options greatly appreciated in value when they vested and were liquidated by court order. As a result, $97,200 is at issue between the parties. In this case, determining whether the estate or the debtor is entitled to the appreciation on options is complicated by 11 U.S.C. § 541(a)(6). This provision excludes from property of the estate "earnings from services performed by an individual debtor after the commencement of the case." Therefore, the estate's interest is limited to the pro rata portion of the proceeds that are related to the debtor's pre-petition services. Allen, 226 B.R. at 867. An individual debtor is entitled to any appreciation that results from post-petition services. 11 U.S.C. § 541(a)(6).

The Bankruptcy Court used the date when Ms. Wick filed bankruptcy to divide the appreciation between pre- and post-petition earnings. In other words, the Court gave the estate the pro rata portion of the options that corresponds to the percentage of the vesting period that had passed before Ms. Wick filed bankruptcy. We agree with this approach. The terms of the stock-option agreement required Ms. Wick to work for one year following the agreement in order for the options to vest. At the time of filing, she had worked for four months. The estate is entitled to the benefit from this pre-petition labor. Since four months is one-third of the one-year vesting period, the estate is entitled to one-third of the final, appreciated value of the stock, less the exempted amount. (One-third of $97,200 is $32,400. Ms. Wick's exemption of $3,925 is subtracted from the $32,400, leaving $28,745 as the estate's interest.) Judgment should enter in favor of the trustee in the amount of $28,745.

Ms. Wick is entitled to the rest of the proceeds from the appreciated stock options. She completed the vesting period when she continued to work for eight

months after filing for bankruptcy. Eight months is two-thirds of the one-year vesting period, and so she may retain this pro rata portion of the appreciation, which is the result of her post-petition services. Therefore, Ms. Wick receives the benefit of her post-petition labor, as mandated by 11 U.S.C. § 541(a)(6).

## III.

The parties have argued vigorously over the effect of the Supreme Court's decision in Taylor v. Freeland & Kronz, 503 U.S. 638 (1992), on this case. In Taylor, the debtor listed a lawsuit with "unknown" value on her exemption schedule. Id. at 640. The debtor told the trustee that she estimated she might win $90,000 in the suit. Id. The trustee did not object, despite the fact that the debtor had only a small exemption amount available and was claiming the entire asset exempt. Id. at 642. Taylor stated that he doubted that the lawsuit would have value, saying it might be a "nullity." Id. at 641. When the debtor was awarded $110,000 in her lawsuit, the trustee demanded that the debtor turn over the money. Id. The Supreme Court held that the trustee's failure to object, when he could have made a valid objection if he had acted promptly, prevented him from later challenging the validity of the exemption. Id. at 642.

In this case, we are not confronted with a trustee who believed the asset was worthless. The trustee in Ms. Wick's case consistently expressed an interest in the asset. Further, Ms. Wick listed a valid statutory basis for her asset, § 522(d)(5), and had sufficient exemption value left to exempt the options partially. The Bankruptcy Court was correct–the trustee had no basis to object to Ms. Wick's claimed exemption. While such an objection perhaps would have led to an earlier resolution of the parties' interests, the estate is not barred from recovery because no timely objection was made.

The District Court found <u>Taylor</u> to be controlling authority. Because we hold that the asset was only partially exempted, our application of <u>Taylor</u> differs. We do not think that the Bankruptcy Code and Rules oblige a trustee to object every time a debtor partially exempts an asset in order to preserve the estate's interest. Since exemptions are routinely smaller than the assets they are designed to protect (for example, with homes), objections would multiply greatly if <u>Taylor</u> were read so broadly. Further, in these situations, the judge would have nothing to determine after the objections, except that the debtor is exempting the asset to the extent the Code allows–a result that is clear from the face of the exemption schedule and § 522. In <u>Taylor</u>, the Court found that the debtor "in fact claimed the full amount as exempt" but did not have a right to exempt more than a small portion of the asset. 503 U.S. at 642. The Court went on to note specifically that the trustee "as a result, apparently could have made a valid objection under § 522(l) and Rule 4003 if he had acted promptly." <u>Id.</u> This case is distinguishable, and we therefore hold that <u>Taylor</u> does not bar the estate's interest.

The judgment of the District Court is reversed. We remand for entry of an order affirming the judgment of the Bankruptcy Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-