ELECTRONIC CITATION: 2007 FED App. 0011P (6th Cir.)
File Name: 07b0011p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: GREGORY ANDERSON and ROSE ANDERSON, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| COLLEEN M. OLSON, Trustee, | ) | |
| | ) | No. 06-8105 |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID A. ANDERSON and DAVID ALLEN ANDERSON, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| _____ | | |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan, Northern Division, at Marquette.
Case No. 04-90467, Adversary Proceeding No. 06-99002.

Submitted: August 1, 2007

Decided and Filed: November 7, 2007

Before: LATTA, PARSONS, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ON BRIEF:** Steven L. Rayman, Steven M. Ellis, RAYMAN & STONE, Kalamazoo, Michigan, for Appellant.

---

## OPINION

---

JOSEPH M. SCOTT, JR., Bankruptcy Appellate Panel Judge. Appellant Colleen M. Olson (the "Trustee) appeals the bankruptcy court's order disapproving the settlement agreement entered into by the Trustee and Defendants David Allen Anderson and David A. Anderson (the "Defendants"). For the reasons that follow, the panel concludes that although the bankruptcy court abused its discretion by applying an erroneous legal standard, the court's decision should be affirmed.

## I.   ISSUES ON APPEAL

The overarching issue on appeal is whether the bankruptcy court abused its discretion in disapproving the settlement agreement entered into between the Trustee and the Defendants by applying an erroneous legal standard. Nevertheless, under the particular facts of this case, resolution of this issue is not determinative. The underlying issue is whether the Trustee's failure to object to the Debtors' claimed exemption within the deadline imposed by Federal Rule of Bankruptcy Procedure 4003(b) removed the property in its entirety from the bankruptcy estate.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit (the "BAP") has jurisdiction to hear and decide this appeal. 28 U.S.C. § 158(b)(1). The United States District Court for the Western District of Michigan has authorized appeals to the BAP, and neither party has timely elected to have this appeal heard by the district court. 11 U.S.C. §§ 158(b)(6), (c)(1). A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). Ordinarily, an order disapproving a settlement is not considered final for purposes of appeal by right under 28 U.S.C. § 158(a)(1). However, in the present case, the orders on appeal entirely dispose of the Trustee's claims against the Defendants. "[A]n order that concludes a particular adversarial matter within the larger case should be deemed final and reviewable in a bankruptcy setting."

*Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 63 (B.A.P. 6th Cir. 2004) (citations omitted).

A bankruptcy court's decision to approve or disapprove a settlement rests in the sound discretion of the bankruptcy judge. A reviewing court will not disturb or set aside the decision unless it achieves such an unjust result as to amount to an abuse of discretion. *Machinery Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963) (citations omitted). Generally, a court "abuses its discretion only when it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 (6th Cir. 1988). Whether the bankruptcy court's discretionary decision is based upon an erroneous interpretation of the law is a legal question that is reviewed *de novo*. *Slutsky v. Am. Express Travel Related Servs. Co. (In re William Cargile Contractor, Inc.)*, 209 B.R. 435, 436 (B.A.P. 6th Cir. 1997). Regardless, the decision of the bankruptcy court can be affirmed "if it is correct for any reason, including a reason not considered by that court." *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 200 (B.A.P. 6th Cir. 1998) (quoting *McDowell v. Krawchison*, 125 F.3d 954, 957 (6th Cir. 1997)).

## III.   FACTS

On May 24, 2004, Gregory Anderson and Rose Anderson (the "Debtors") filed their chapter 7 petition and accompanying schedules, and Colleen M. Olson (the "Trustee") was appointed chapter 7 trustee. On October 4, 2004, the Debtors amended Schedules A and C to include a previously undisclosed interest in real property located in the Township of Crystal Falls, County of Iron, Michigan (the "Cabin property"). According to those Schedules, the Debtors possessed an undivided one-half interest in the Cabin property as tenants by the entirety, with the remaining one-half interest held in joint tenancy by the Defendants. Amended Schedule C listed the property as follows:

> ½ interest in old cabin. The debtors own a ½ interest in an old cabin that may have a total value of about $30,000. The debtors' interest would be $15,000.

(Appellant's App. at 42.) The schedule also identified 11 U.S.C. § 522(d)(5) as the statutory basis for the exemption and listed the value of the claimed exemption as well as the current market value of the Debtors' interest in the Cabin property as $15,000. At no point did the Trustee object to the claimed exemption.

Almost a year later, on September 19, 2005, the Trustee obtained a drive-by appraisal of the Cabin property. Although the Debtors had indicated that the property "may have a total value of about $30,000," the Trustee's appraisal gave an estimated value of $60,000. As a result of this new-found equity, the Trustee filed an adversary proceeding against the Defendants, the co-owners of the Cabin property, seeking authority under 11 U.S.C. § 363(h) to sell both the estate's and the Defendants' interests in the property.[1]

On April 7, 2006, the Trustee filed a motion to approve her settlement of the adversary proceeding with the Defendants pursuant to Federal Rule of Bankruptcy Procedure 9019. Among other terms, the proposed settlement agreement provided that the Trustee would accept $13,560 from the Defendants in exchange for the estate's interest in the Cabin property, taking into account the Debtors' claimed exemption of $15,000.[2]

On April 12, 2006, the Debtors filed an objection to the motion premised on their belief that the settlement would preclude recovery of their claimed exemption of $15,000. Upon learning that the settlement agreement contemplated their retention of the claimed $15,000 interest in the Cabin property, the Debtors withdrew their objection.

On April 25, 2006, the bankruptcy court conducted a hearing on the motion for approval of the settlement. At the hearing, the Debtors' counsel confirmed that his clients had withdrawn their objection to the settlement and that all parties present at the hearing were in agreement with its terms. The bankruptcy court then *sua sponte* raised the issue of whether the bankruptcy estate had an interest in the Cabin property to convey to the Defendants, given the absence of an objection to the Debtors' claimed exemption. Responding to the court's comments, the Debtors reinstated their

---

[1] Section 363(h) permits the sale of property of the estate, under § 363(b), along with the interest of a co-owner of the property, if at the time of the commencement of the case the debtor held an undivided interest in the property as a tenant in common, joint tenant, or tenant by the entirety, and if four additional statutory conditions are met. 11 U.S.C. § 363(h).

[2] It is difficult to understand in practical terms how the settlement would work. The Trustee proposed in her motion to settle the adversary proceeding by conveying to the Defendants the estate's interest in the Cabin property "after taking into account the Debtors' available exemption." Did this mean that after the conveyance by the Trustee to the Defendants, the Defendants would own the entirety of the Cabin property, subject only to their obligation to pay the Debtors their $15,000? Or did it mean that because the Debtors' exemption was $15,000, which equated to 1/4th of the value, that after the sale the Debtors would own an undivided 1/4th interest in the Cabin property, with the Defendants owning the remaining 3/4ths of the property? Assuming the former scenario were the one contemplated by the Trustee, it is difficult to see how the sale could have gone forward over the Debtors' objection since the Debtors would have lost their ownership interest in the realty without any guaranty that they could recover their $15,000 from the Defendants.

original objection and additionally objected on the basis that the Cabin property had been properly exempted and was no longer property of the estate subject to sale by the Trustee.

On October 20, 2006, the bankruptcy court issued its opinion and entered an order denying the Trustee's motion for approval of her settlement with the Defendants because the bankruptcy estate no longer had an interest in the Cabin property, as a result of the Debtors' unchallenged exemption. On October 30, 2006, the Trustee filed a motion to reconsider, requesting that the court reverse its October 20 decision because, in part, it was in direct conflict with the holding in *In re Heflin*, 215 B.R. 530 (Bankr. W.D. Mich. 1997), a decision by a different bankruptcy judge in the same district. On November 28, 2006, the bankruptcy court denied the Trustee's motion to reconsider.

On December 8, 2006, the Trustee timely filed her appeal of both orders.

## IV.    DISCUSSION

### A. Standard for approval or disapproval of a settlement agreement

Rule 9019 of the Federal Rules of Bankruptcy Procedure provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The rule offers no guidance as to the criteria to be used in evaluating whether a settlement should be approved, but courts uniformly have drawn from the language of the Supreme Court's decision in *TMT Trailer Ferry* in establishing a "fair and equitable"[3] threshold for settlement approval. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163 (1968). Although the *TMT Trailer Ferry* case was decided under the Bankruptcy Act, "its principles have been broadly held applicable to settlements under the Bankruptcy Code." 2 *Norton Bankr. L. & Prac. 2d* § 41:10 (2007). Many Rule 9019 opinions have relied on *TMT Trailer Ferry* "both for the substantive requirement that settlement represent a fair compromise of disputed issues, and for the requirement that such settlement be preceded by adequate inquiry." *Id.*

---

[3]  Despite the overlap in terminology, the "fair and equitable" standard as applied to Rule 9019 does not measure a settlement's conformity with the absolute priority rule of 11 U.S.C. § 1129(b)(2), but instead is "fairness" and "equity" in the traditional sense. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 463 (2nd Cir. 2007). Whether a particular settlement's distribution scheme complies with the Bankruptcy Code's priority scheme is, however, a crucial factor for the court to consider when determining whether a settlement is "fair and equitable" under Rule 9019. *Id.* at 464.

The Sixth Circuit Court of Appeals has held that "the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is *fair and equitable*." *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) (emphasis added). The court must weigh the conflicting interests of all relevant parties, "considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988) (citation omitted). "A bankruptcy judge need not conduct a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only be apprised of the relevant facts and law so that he can make an informed and intelligent decision and set out the reasons for that decision." *Fishell v. Soltow (In re Fishell)*, 47 F.3d 1168, 1995 WL 66622, at *3 (6th Cir. Feb. 16, 1995) (unpublished table decision) (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)); *see also TMT Trailer Ferry*, 390 U.S. at 437 (holding that bankruptcy court must have the facts in order to make an informed and independent decision).

Although published Sixth Circuit case law on Rule 9019 settlements is relatively sparse, in unpublished decisions the Court of Appeals and Bankruptcy Appellate Panel have consistently reaffirmed their adherence to the "fair and equitable" standard. *See Lyndon Prop. Ins. Co. v. Katz*, 196 Fed. Appx. 383, 387 (6th Cir. 2006); *Bard v. Sicherman (In re Bard)*, 49 Fed. Appx. 528, 530 (6th Cir. 2002); *In re Fishell*, 47 F.3d 1168, 1995 WL 66622, at *3 (6th Cir. Feb. 16, 1995) (unpublished table decision); *Cook v. Terlecky (In re Cook)*, 336 B.R. 600, 2006 WL 13114, at *3 (B.A.P. 6th Cir. Jan. 4, 2006) (unpublished table decision); *Porter Drywall Co. v. Haven, Inc. (In re Haven, Inc.)*, 326 B.R. 901, 2005 WL 927666, at *3 (B.A.P. 6th Cir. April 7, 2005) (unpublished table decision). Further, the vast majority of appellate courts that have addressed the issue have relied upon the same or similar criteria.[4] No appellate court has rejected, either expressly or implicitly, the efficacy of this approach.

---

[4] *Ars Brook LLC v. Jalbert (In re Servisense.com, Inc.)*, 382 F.3d 68 (1st Cir. 2004); *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2nd Cir. 2007); *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639 (3rd Cir. 2006); *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Co-op, Inc. (In re Cajun Elec. Power Co-op, Inc.)*, 119 F.3d 349 (5th Cir. 1997); *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582 (7th Cir. 1994); *Drexel Burnham Lambert, Inc. v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.)*, 730 F.2d 1128 (8th Cir. 1984); *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986); *Reiss v. Hagmann*, 881 F.2d 890 (10th Cir. 1989); *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990).

Despite this uniformity in application, the bankruptcy court here chose to reject the fair and equitable standard in favor of a standard it enunciated in *In re Dalen*, 259 B.R. 586 (Bankr. W.D. Mich. 2001). According to *Dalen*, "the ultimate question raised in a hearing concerning court approval of a trustee's proposed settlement is whether the trustee, in reaching that settlement, has complied with her fiduciary duties [of care, loyalty, and obedience] to the bankruptcy estate, its creditors, and other parties in interest."[5] *Id.* at 611. This fiduciary standard purportedly is derived from "a well developed body of Sixth Circuit case law concerning the process by which a court is to approve consent decrees,"[6] and, according to the bankruptcy court, "offer[s] considerable assistance in determining how a bankruptcy court should evaluate a settlement agreement which has been presented to it by a trustee for approval." *In re Dalen*, 259 B.R. at 604. In reaching this conclusion, the bankruptcy court reasoned that it was not bound by the Supreme Court case of *TMT Trailer Ferry* because that case, involving the absolute priority rule, had been misinterpreted and misapplied. *Id.* The bankruptcy court further reasoned that it was not bound by the Sixth Circuit decisions *Reynolds* and *Bauer* because they were "not on point." *Id.* at 604. The court also did not believe that it was bound by the reasoning in the Sixth Circuit decision *In re Fishell*, which offered "the most extensive discussion" of the process for approving proposed settlements in bankruptcy cases, because *Fishell* is an unpublished decision.

The panel disagrees. Although *TMT Trailer Ferry* concerned the absolute priority rule, the Supreme Court, in discussing the importance of settlements in bankruptcy cases, stated:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the

---

[5] The court reasoned that in drafting Rule 9019 Congress intended the settlement approval process to be entirely discretionary: "Rule 9019(a) is intended to be nothing more than a safe harbor for trustees who wish to avail themselves of the bankruptcy court's protection prior to entering into settlement agreements which may have substantial consequences to the estate. . . . [The trustee] may pursue and consummate a settlement without bankruptcy court intervention if she so chooses." *In re Dalen*, 259 B.R. at 599.

[6] "A consent decree is a strange hybrid in the law [typically used in federal employment discrimination law suits]. It is both a voluntary settlement agreement which could be fully effective without judicial intervention and a final judicial order placing the power and prestige for the courts behind the compromise struck by the parties. Hence, a consent decree is a settlement agreement subject to continued judicial policing." *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017-18 (6th Cir. 1994) (citations omitted).

wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*TMT Trailer Ferry*, 390 U.S. at 424-25.

Clearly, the bankruptcy court was in error in ignoring the Supreme Court's directive. Nowhere in *TMT Trailer Ferry* does the court discuss, much less promote, a fiduciary standard for review of proposed settlement agreements. It was error for the bankruptcy court to ignore the Sixth Circuit's discussion in *Reynolds* and *Bauer*, because those cases, although not bankruptcy cases, acknowledge that *TMT Trailer Ferry* established a standard for every court to apply when evaluating a proposed settlement agreement.

In summary, the bankruptcy court was bound by the "fair and equitable" standard established by the Sixth Circuit Court of Appeals in *Reynolds* and *Bauer*, a standard that is in harmony with the BAP's own, *albeit* unpublished, decisions in *Haven* and *Cook*, and with the weight of judicial authority expressed by numerous other circuits. There is no precedent–binding, persuasive, or otherwise–advocating that a bankruptcy court's approval of a Rule 9019 settlement is to be judged according to a trustee's adherence to his or her fiduciary duties.[7] Consequently, this Panel holds that the bankruptcy court applied an improper standard in disapproving the settlement agreement entered into by the Trustee and the Defendants. Even so, under the facts of this case, the court's failure to use the correct standard is a harmless error, not mandating reversal, for the following reasons.

The decision of the bankruptcy court to disapprove the settlement agreed to by the parties was predicated solely on its conclusion that the Debtors' unchallenged exemption of the Cabin property removed the property in its entirety from the bankruptcy estate.

---

[7] Although the *Dalen* court looked to consent decree decisions, in particular *United States v. City of Miami*, 614 F.2d 1322 (5th Cir. 1980), for guidance in determining how a bankruptcy court should evaluate a settlement agreement, that particular decision states that the process for court approval of a consent decree represents an "intermediate" approach between the standard for approval of a settlement in typical litigation and of a settlement in a bankruptcy case. *Id.* at 1331. In fact, the Fifth Circuit in *City of Miami* makes clear that all bankruptcy settlements must be approved by the bankruptcy court as "fair and equitable." *Id.* at 1330. The process for court approval of consent decrees was not developed to serve as a template for bankruptcy court settlements. Rather, the pre-established process for bankruptcy settlement approval (i.e., mandatory court approval, notice to interested parties, and the "fair and equitable" requirement) was altered and adjusted to fit the particularities of consent decrees. *See, e.g., id.* at 1332 n.18. ("Unlike situations in which the parties are attempting to secure a settlement in a bankruptcy proceeding . . . , we need not fear here that any party is attempting to profit at the expense of unrepresented individuals.") The *Dalen* court has applied a standard that is essentially a copy of an amended copy, asserting that it is a more accurate representation of the original than the original itself.

[T]he Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the [Cabin] property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the [Cabin] property that the bankruptcy estate in all likelihood no longer owns. The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.

(Appellant's App. at 169-70).

If the bankruptcy court was correct in its conclusion that the estate no longer possessed an interest in the Cabin property, because of the Trustee's failure to object to the Debtors' claimed exemption within the Rule 4003(b) deadline, then the BAP cannot sanction a settlement that purports to convey that interest, regardless of the bankruptcy court's improper use of a fiduciary standard in disapproving the settlement.[8] The propriety, or lack thereof, of the bankruptcy court's ultimate decision does not turn on whether the court used the mandated standard for approval of a settlement, but instead turns on whether the court was correct in determining that the Cabin property was no longer property of the bankruptcy estate. That is, if the court was correct regarding the exemption issue, then it also was correct in disapproving the proposed settlement, and its decision must be affirmed. On the other hand, if the court was wrong regarding the exemption objection issue, then it also was in error in disapproving the proposed settlement, and its decision must be reversed.

## B. Failure to object to a claimed exemption within Rule 4003(b) deadline

Upon the filing of a bankruptcy petition, "all legal or equitable interests of the debtor in property" become the property of the bankruptcy estate. 11 U.S.C. § 541. The Bankruptcy Code[9] permits the debtor to prevent the distribution of certain estate property by claiming it as exempt. 11 U.S.C. § 522(b). A properly filed exemption removes property from the bankruptcy estate, and consequently from the reach of creditors and the bankruptcy trustee. *Lebovitz v. Hagermeyer (In re Lebovitz)*, 360 B.R. 612, 618 (B.A.P. 6th Cir. 2007). In Michigan, a debtor is permitted to choose

---

[8] The bankruptcy court recognized as much in a footnote to its decision: "It is difficult to see how a court could approve as fair and equitable a settlement . . . where the bankruptcy estate is to receive $13,500 [sic] in exchange for property if the bankruptcy estate has no interest in the property to convey." *Id.* at 143 n.7.

[9] The Bankruptcy Code is contained in 11 U.S.C. §§ 101-1330.

from the exemptions afforded by state law or from the federal exemptions listed in § 522(d). In this case, the Debtors selected the federal exemptions.

Section 522(l) of the Bankruptcy Code requires a debtor to file with the court a list of property that he or she wishes to exempt from the bankruptcy estate. These proposed exemptions must be listed on the debtor's Schedule C and must include a description of the property exempted, the statutory section authorizing the exemption, the value of the exemption, and the market value (less applicable liens) of the exempted property. Fed. R. Bankr. P. 4003(a). Unless a party in interest objects to the listed exemption within 30 days of the close of the meeting of creditors or within 30 days after a subsequent amendment to the schedule, the property claimed as exempt is exempt, revests in the debtor, and is no longer property of the estate. 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003(b); *In re Brown*, 178 B.R. 722, 727 (Bankr. E.D. Tenn. 1995).

With respect to the exemption list filed by the Debtors herein, the bankruptcy court stated:

> In this instance, Debtor's "list of property" [*i.e.,* Debtor's amended Schedule C] clearly describes the exemption claimed as the undivided one-half interest in the hunting property. Moreover, the amount Debtors set as the value of the exemption claimed, $15,000, not only was within the limits established under the Section 522(d)(5) exemption claimed, but also was the exact amount Debtors set as the overall value of the undivided interest in question. It would seem then that Debtors intended to keep as their own the undivided interest in the hunting property when they added that property to their amended Schedule C. Consequently, that interest would have ceased being property of the estate by operation of Section 522(l) when neither the Chapter 7 Trustee nor any other party in interest filed an objection within the November 3, 2004 deadline.

(Appellant's App. at 146).

Based on this conclusion, the bankruptcy court refused to approve the Trustee's proposed settlement with the Defendants, which contemplated a sale of the estate's interest in the Cabin property. The bankruptcy court reasoned that its interpretation of § 522(l) was consistent with the Supreme Court's decision in *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S. Ct. 1644 (1992), wherein the Court addressed the significance of timeliness in the filing of an objection. Taking a strict approach, the Court held that a trustee may not contest the validity of an exemption after the 30-day objection deadline has passed, even if the debtor had no colorable basis for claiming the exemption. *Id*.

In *Taylor*, the debtor had disclosed an employment discrimination lawsuit on her schedules, listed its value as "unknown," and claimed the full amount of the "unknown" proceeds as exempt. *Id.* at 640. (The debtor and the trustee later agreed that the debtor could not have properly exempted more than a small portion, approximately $2,500, of any potential recovery. *Id.* at 642.) The trustee did not object to the debtor's claimed exemption, believing that the lawsuit was of no value. *Id.* at 641. However, when the lawsuit was ultimately settled for $110,000, the trustee objected to the claimed exemption on the basis that it was not filed in good faith. *Id.* at 643. Affirming the lower courts' rulings denying the trustee's objection as untimely, the Supreme Court reasoned, "Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors [or the trustee] may not object after 30 days 'unless, within such period, further time is granted by the court.'" *Id.* at 643. As explained by the Court:

> Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality. . . . If [the trustee] did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue, see Rule 4003(c), or he could have asked the Bankruptcy Court for an extension of time to object, see Rule 4003(b). Having done neither, [the trustee] cannot now seek to deprive [the debtor] of the exemption.

*Id.* at 644.

The *Taylor* decision is clear that when a debtor makes an unambiguous manifestation of intent to seek an unlimited exemption in property, then, absent a timely objection, that property is exempt in its entirety, even if its actual value exceeds statutory limits, and it is no longer property of the estate. The question here is what constitutes such an intent.

The Defendants argue, and the bankruptcy court agreed, that when a debtor schedules an exemption with identical market and exemption values, as in this case, the debtor is clearly indicating the intention to exempt the property in full, regardless of its actual value. In contrast, the Trustee contends that a debtor's mere listing of identical market and exemption values is insufficient to manifest the required intent. According to the Trustee, listing identical values simply indicates that the debtor desires to exempt an interest in property up to the specific dollar amount shown. Therefore, maintains the Trustee, if a debtor wants to exempt a piece of property in its entirety, he

or she must list its market value as unknown and its exempted value as 100%, or make some similar notation evidencing such an intent.

We reject this argument. As the bankruptcy court correctly noted, there is nothing on the form Schedule C that alerts a debtor that the required way to assert an in-kind exemption is to list the value unknown and the exemption as 100%. To the contrary, the form which is entitled "Property Claimed As Exempt" simply asks a debtor to list the property claimed exempt and to place values on the exemption and the property. The Debtor complied with these instructions by specifying that the property claimed as exempt was a "½ interest in old cabin." The Debtors stated that the Cabin property "may have a total value of about $30,000," clearly an estimation of value, and that therefore, their one-half interest "would be $15,000." (Appellant's App. at 42.) Thus, it was clear that the Debtors were seeking to exempt their full interest in the Cabin property, which they believed had a value of $15,000.

Moreover, we are persuaded generally that a debtor's listing of an exemption in an amount sufficient to exempt all of the available (i.e., unencumbered) value in the property indicates his or her intent to exempt the property in full. "[A]n unstated premise of the Court's holding [in *Taylor*] was that a debtor who exempts the entire reported value of an asset is claiming the 'full amount' whatever it turns out to be." *Allen v. Green (In re Green)*, 31 F.3d 1098, 1100 (11th Cir. 1994). A contrary ruling would reverse the burden of proof placed on an objecting party to challenge the propriety of an exemption in Rule 4003(c) and render the 30-day objection period meaningless. *In re Harrington*, 306 B.R. 172, 181-183 (Bankr. E.D. Tex. 2003). As explained by the Supreme Court in *Taylor*, if a trustee is uncertain about an exemption claimed by a debtor, the trustee may seek a hearing on the issue or request an extension of time to object. *Taylor*, 503 U.S. at 644. "Failure to timely object will leave the trustee without recourse if the court later determines that the debtor intended to exempt the property in full, even if such a ruling results in an exemption greater that the statutory limits." *Mullis v. Aggeorgia Farm Credit, ACA (In re Jones)*, 357 B.R. 888, 897 (Bankr. M.D. Ga. 2005).

We recognize that there is a split of opinion by the bankruptcy courts on this issue. *See, e.g., In re Heflin*, 215 B.R. 530, 534 (Bankr. W.D. Mich. 1997) ("[W]here the debtor claims a specific dollar amount as exempt, the debtor is bound by that amount and . . . cannot claim that the entire

property is exempt."); *In re Jones*, 357 B.R. at 892 ("Claiming an exemption sufficient to exempt all the available . . . value in a property should be deemed to indicate the debtor's intent to exempt the property in full."). Three courts of appeals have addressed this issue. The first, *Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1319 (9th Cir. 1992), decided by the Ninth Circuit immediately after *Taylor*, is distinguishable from the facts of the present case because the debtors in *Hyman* did not exempt all of the unencumbered value in the property. Instead, they listed the value of their home as $415,000, subject to encumbrances of $347,611, thus producing equity of $67,389, but only exempted $45,000, the maximum statutory amount. *Id.* at 1320. As such, it was not surprising that the court limited the debtors' exemption to $45,000 when the value of their property proved to be greater than the value scheduled by the debtors. *See In re Peterman*, 358 B.R. 801, 804 (Bankr. D. Colo. 2006) (*Hyman* is inapplicable where the debtors listed specific values of their property, "and the value of the property and the value of the exemption claimed were the same."); *see also In re Jones*, 357 B.R. at 892 n.5 (Explaining that the *Hyman* result was based on a peculiarity of California exemption law, where the homestead exemption does not apply to the property, but to the proceeds of the property after a sale.)

In *Stoebner v. Wick (In re Wick)*, 276 F.3d 412 (8th Cir. 2002), the Eighth Circuit considered facts identical to those in *Taylor*: a debtor who valued certain stock options as unknown and claimed an exemption in those options, also with an unknown value. The trustee did not make a timely objection to the exemption even though the maximum permitted by statute was $3,925. When the debtor subsequently exercised the options and received $97,200, the trustee sought turnover of the proceeds, less $3,925. *Id.* at 414. Notwithstanding the similarity with *Taylor*, the court limited the debtor's exemption to $3,925, looking behind the language used by the debtor in her schedules to determine her intent. Concluding that all of the parties understood that the options were only partially exempt, the court found *Taylor* to be inapplicable. *Id.* at 417.

To the extent *Wick* suggests that any ambiguity should be resolved against the debtor, we believe that *Taylor* compels a contrary result, as recognized by the Eleventh Circuit in *In re Green*. In *Green*, the debtor, rather than listing the value of the property and exemption as "unknown" as in *Taylor*, scheduled the value of the lawsuit from an auto accident as one dollar and the value claimed as exempt as one dollar also. *In re Green*, 31 F.3d at 1098. The trustee did not object to the exemption and subsequently a dispute arose over who was entitled to the proceeds from the

settlement of the lawsuit, the trustee or the debtor. In affirming the district court's conclusion that the debtor was entitled to the entire proceeds from the settlement, the Eleventh Circuit rejected the trustee's argument that its ruling would force trustees to file needless objections to establish the value of contingent assets. *Id.* at 1101. The court stated that the responsibility for this result rested with Congress and the Supreme Court, which had made it clear that the burden is on the trustee to object in a timely manner to any improper exemption claims. *Id.*

We believe that the *Green* court's holding promotes the finality contemplated by Rule 4003 and mandated by *Taylor*.

> [W]here there is a date when the parties' rights can be finally determined–in this case, thirty days after the creditors' meeting if no objection is filed–the parties can proceed from that date knowing which property is property of the estate and which property belongs to the debtor. The debtor from that day forward can treat exempted property as his or her own and is not forced to wait until some unknown future date when the trustee or another party in interest might haul the debtor into court seeking that property.

*In re Peterman*, 358 B.R. at 804 (quoting *Taylor v. Freeland & Kronz*, 938 F.2d 420, 425 (3rd Cir. 1991), *aff'd*, 503 U.S. 638 (1992)); *see also In re Morgan-Busby*, 272 B.R. 257, 265 (B.A.P. 9th Cir. 2002) ("Allowing a trustee to distinguish between an objection to an exemption itself and the value of the property subject to that exemption does not promote finality.").

In summary, under the facts of this case, the bankruptcy court was correct in holding that the Cabin property was not property of the bankruptcy estate. As such, the court's denial of the proposed settlement was appropriate.

## V.  CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court denying approval of the settlement proposed by the trustee are AFFIRMED.